# Richmond

## LILLIE B. GARNER v. THEODORE H. BESKIN, IN HIS OWN RIGHT AND AS EXECUTOR OF THE WILL OF LENA BESKIN, DECEASED.

January 21, 1957.

Record No. 4589.

Present, Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Jodie L. Atkins,* for the appellant.

*Harry L. Nachman (Bert A. Nachman,* on brief), for the appellee.

WHITTLE, J., delivered the opinion of the court.

On March 29, 1948, Lillie B. Garner filed suit against her brother, Theodore H. Beskin, in his own right and as executor of the will of Lena Beskin, deceased (mother of the litigants), in which she prayed that he be required to forthwith settle his account as executor.

To a decree reinstating a claim of $6,498.05 which had been disallowed by the Commissioner of Accounts, and reinstating an attorney's fee of $900 which had been reduced by the commissioner to $500, we granted Mrs. Garner this appeal.

Lena Beskin died testate on November 12, 1946. In her will she gave her son, Theodore H. Beskin, all of her shares of the capital stock of Beskin's Department Store, Incorporated. The will recited that Theodore H. Beskin owned fifty per cent of the capital stock of the department store, and by the terms of the will "he will be the owner of 498 shares of the capital stock of the said corporation. This bequest is given with the proviso, that if the said shares of capital stock * * * owned by me, is of the value of more than one-half of my estate, then my son, Theodore H. Beskin, is directed to pay to my daughter, Lillie Garner, the difference in money, so that each of my said two children will receive an equal amount from my estate."

The will further provided that if the two children were unable to agree upon the value of certain real estate and the value of the shares of capital stock then in that event Benjamin Fisch, brother of the testatrix, should determine the value thereof and his decision should be binding and conclusive.

It was further provided that if for any reason Benjamin Fisch declined to act as arbitrator, then in that event the judge of the Corporation Court of the City of Newport News was to appoint an arbitrator whose decision "shall be final, binding and conclusive".

The beneficiaries could not agree as to the values. Benjamin Fisch declined to act, and the court appointed B. Glen Roy, Vice President of the First National Bank of Newport News, in his stead.

Pursuant to the court's order, Roy made his report in which he determined the value of the stock to be $145.6125 a share, upon which basis Mrs. Garner received settlement. In his report Roy accepted as an asset of the corporation the claim of $6,498.05, which

was treated as a debt owing by the testatrix to the corporation and used in determining the value of the stock.

A decree was later entered, without objection, referring the executor's settlement to the Commissioner of Accounts for a report thereon. In response to the decree of reference the commissioner filed a report on May 25, 1954, in which the claim of $6,498.05 against Lena Beskin in favor of the department store was disallowed.

The commissioner further reported: "Your commissioner has approved the aforesaid accounting of Theodore H. Beskin, Executor of the estate of Lena Beskin, as to all items of receipts and disbursements contained therein, except the disbursements of $900.00 for attorney's fee. This disbursement has been found to be excessive in the sum of $400.00, which excess is disallowed."

Beskin excepted generally to the report and especially to the items disallowing the claim of $6,498.05 due the corporation and the reduction of the attorney's fee. Thereafter the court, by decree entered on October 6, 1955, sustained the exceptions of the executor, thus reinstating the two items.

To this decree Lillie B. Garner filed her notice of appeal and assigned the following errors:

"1. The court erred in failing to confirm * * * the report of Commissioner of Accounts dated May 25th, 1954, * * * especially in the following particulars:

"(a) In allowing the claim of the Beskin's Department Store, Incorporated against the estate, in the sum of $6,498.05.

"(b) In allowing more than the sum of $500.00 as counsel fees rendered on behalf of the estate."

■ The first assignment deals with the item of $6,498.05. The major part of this item grows out of transactions between Joseph Beskin (the deceased husband of the testatrix and father of the litigants) and the department store, which resulted in a balance due the store by Joseph Beskin's estate of $4,148.05. Joseph Beskin predeceased his wife, the testatrix, and under his will his interest in the store passed to her.

While the amount due by Joseph Beskin's estate is not seriously in dispute, it is contended by appellant that the claim is barred by the five-year statute of limitations. § 8-13, Code of Virginia, 1950.

In deciding this question the court properly held "* * * (A)s a matter of fact there was no due date on said claim of Beskin's Department Store, Inc., and that considering the family relationship be-

tween the parties and the records and accounting in the case, and hearings before the court, conclusively show that the claim could be paid whenever it suited the convenience of Lena Beskin, and the court holds as a matter of fact and as a matter of law, that the claim * * * is a just claim and should be paid by the estate of Lena Beskin". Thus the ruling that this ($4,148.05) portion of the claim of $6,498.05 was a proper charge against the Lena Beskin estate is approved.

Mrs. Garner next contends that the remaining item of $2,350 of the $6,498.05 claim was a gift by the store to her mother and should have been so treated.

Mrs. Beskin was an invalid and wholly incapacitated for a long period prior to her death. When she was stricken, without any suggestion on her part, her son who, together with his mother, owned all of the capital stock of the corporation, continued to pay her $50 per week over a period of forty-seven weeks, the payments totaling $2,350. The payments were charged on the books as loans to Mrs. Beskin, and the total, $2,350, was added to the $4,148.05 (the amount due the store by Joseph Beskin), the two items making the total of the claim of $6,498.05.

Theodore H. Beskin was the only witness who testified regarding the payments. He was asked by the commissioner:

"Q. I would like to ask a question about these salary payments that you made * * *. Did I understand you to say that the store gave those things to your mother?

"A. The store gave; no—the store paid my mother's salary."

On further examination the witness stated:

"Q. I understood you to say the store voluntarily made those payments to your mother?

"A. No, one year after my father's death, one year after that, we put in my mother's envelope $50.00 a week which was not on the payroll and which was handled as a loan to her. It was necessary. She was getting that. She had been getting that all along and it would have been detrimental, I think, to her condition if we had stopped seeing that she got the same envelope each week.

"Q. Did your mother actually borrow those sums or did you voluntarily continue to pay them to her?

"A. We continued to pay them to her.

"Q. Without any request from her?

"A. No, but I know they were necessary. You can check my mother's checking accounts and whatever money she had, and you will

note she did not leave any large sums of cash."

It is obvious from the testimony that Mrs. Beskin did not borrow this money. The payments were made by this family-owned corporation as gifts or voluntary salary payments and cannot be treated as loans. Therefore the aggregate payments to Mrs. Beskin of $2,350 should have been deducted from the $6,498.05 claim allegedly due the corporation by her estate. However, we agree with appellee that from an accounting standpoint, the allowance of the sum as an asset of Beskins Department Store, Incorporated, made no difference in the result to Mrs. Garner. Had the amount been denied as such allowance, the estate of her mother would have been increased to the extent of $2,350. This is true for the reason that by allowing the $2,350 as an asset of the store, the value of its capital stock was increased and Mrs. Garner received the benefit of the increase at the expense of her brother who purchased the stock, and if the $2,350 be deducted as an asset of the store and added to the estate of her mother, Mrs. Garner would be entitled to one half of the sum, that is the same amount she received through the increased value of the stock.

The second assignment of error deals with the allowance of counsel fees. It will be remembered that the attorney had been paid the sum of $900 for legal services rendered the estate and the commissioner disallowed $400 of this amount, thereby reducing the fee to $500. The court reinstated the $900 payment, which action is here complained of.

Mrs. Garner's present counsel was not in the case at its inception. The assets of the estate amounted to more than $100,000, and in addition to tax questions involved, the litigation has been prolonged and complicated. The learned trial judge has had the case before him from its beginning, and no one is in a better position than he to know the value of the legal services rendered the estate, and his determination of a just and reasonable compensation should not be disturbed.

For the reasons stated the decree appealed from is affirmed.

*Affirmed.*